United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVSISION**

MESSIAH MESSIAH,

Plaintiff,

v.

D. GARCIA LARA, et al.,

Defendants.

Case No. 22-cv-02616-JSW   (PHK)

**ORDER RE: EXPERT DISCOVERY AND SETTING HEARING ON REMAINING DISCOVERY DISPUTES**

Re: Dkt. 136

**INTRODUCTION**

All discovery matters in this case have been referred to the undersigned. [Dkt. 130].  Now before the Court is a Joint Discovery Letter Brief filed by the Parties, which raises issues regarding both expert discovery and fact discovery. [Dkt. 136].

The Court finds the dispute regarding expert depositions suitable for resolution without oral argument and resolves it as set forth below. *See* Civil L.R. 7-1(b).

As to all other disputes raised in the letter brief [Dkt. 136], the Court **SETS** a Discovery Hearing on those other issues for Tuesday, July 7, 2026 at 2:00 pm to be held in-person in Courtroom F.

**DISCUSSION**

**Legal Standards**

The Court has broad discretion and authority to manage discovery. *U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Laub v. U.S. Dep't of Int.*, 342 F.3d 1080, 1093 (9th Cir. 2003). The Court's discretion

extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (holding trial courts have "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"). For example, the Court may limit the scope of any discovery method if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i).

### Depositions of Experts Mr. Allen and Mr. Atchley

As noted, the Joint Letter Brief presents a dispute as to expert depositions. [Dkt. 136]. Specifically, the Parties dispute whether Plaintiffs should be permitted to depose two experts identified in Defendants' expert disclosures, Messrs. Allen and Atchley. Defendants argue that Plaintiffs have already taken more than the presumptive limit of ten depositions in this case, pursuant to Fed. R. Civ. P. 30. Further, because Mr. Allen and Mr. Atchley were previously deposed as fact witnesses, Defendants argue that their depositions as expert witnesses would be "unreasonably cumulative" and "unduly burdensome" and that Plaintiff has already had "ample opportunity" to obtain the same information sought by these expert depositions. [Dkt. 136 at 10; Dkt. 136-3 at 1].

In opposition, Plaintiff contends that the prior depositions were taken in the witnesses' capacities as fact witnesses, while the newly noticed depositions concern their testimony as designated experts. [Dkt. 136 at 4]. Furthermore, Plaintiff argues that Rule 26(a)(b)(4)(A) allows for the deposition of "any person who has been identified as an expert whose opinions may be presented at trial," and that both Mr. Allen and Mr. Atchley have met these criteria. *Id.*

Defendants' request for a protective order barring the expert depositions of Messrs. Allen and Atchley is **DENIED**. Defendants admit that these experts "will be providing expert testimony as to . . . prison operations, emergency response, post-use of force review, and allegations of excessive force review." [Dkt. 136 at 10]. The fact that these two witnesses were deposed as fact witnesses on those topics is not a substitute for and is not cumulative of their expert opinions on those topics. Fact discovery is directed to facts; expert discovery is directed to the witnesses' opinions on various issues in the case – just because that expert testimony may relate to fact testimony previously taken does not mean there was a fair opportunity to examine those witnesses

2

as to their expert opinions. Even though they were deposed as fact witnesses, deposing Mr. Allen or Mr. Atchley, in their capacities as experts, is not needlessly cumulative and is not unduly burdensome. The prior depositions concerned the witnesses' factual knowledge and personal experience, while the noticed depositions concern expert opinions, which are subject to expert discovery. *See Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 679 and n.5 (N.D. Cal. Feb. 26, 2021) (motion to strike expert granted in part despite argument that witness was previously deposed as a fact witness; "The prejudice to [moving party] Zeiger is clear. If [expert] Kean had been properly disclosed as an expert, Zeiger would have been given a full Rule 26 disclosure; could have questioned Kean as an expert, rather than as a corporate representative as occurred in reality" and "that Kean was deposed as a fact witness . . . is of no moment because this new declaration includes expert opinions that could not reasonably have been anticipated from a non-expert corporate representative.").

Indeed, Defendants acknowledge that, under Rule 30, Plaintiff may seek leave to take more than the presumptive limit of ten depositions. [Dkt. 136 at 10]. For reasons that are not persuasively stated, Defendants "are unwilling to stipulate to additional depositions" apparently because Rule 30 simply puts the burden to seek leave on Plaintiff. *Id.* That alone is not an adequate excuse to oppose the motion. Parties stipulate to matters frequently regardless of whether or not one party has the burden to seek leave on an issue, precisely because there are no compelling *substantive* (as opposed to purely *formalistic* reasons based on who has the burden to seek leave) reasons to refuse to stipulate. Indeed, wise counsel often admits that a previously deposed fact witness can be deposed again as an expert witness, without requiring unnecessary motions practice. *See, e.g., In re IBM Peripheral EDP Devices Antitr. Litig.*, 1977 WL 4353, at *1 (N.D. Cal. Dec. 16, 1977) ("While two of these witnesses have been previously deposed (Messrs. Gardner and Stafford), Memorex concedes that IBM did not have the opportunity to question them as experts. It indicates its willingness to produce them . . . . The court is of the opinion that IBM should be allowed to depose Messrs. Gardner and Stafford as to the subject matter of their proposed testimony as experts.").

Under these circumstances, the prior fact depositions of Mr. Allen or Mr. Atchley do not preclude Plaintiff from conducting expert witness depositions of these same individuals. The Court

United States District Court
Northern District of California

therefore **GRANTS** Plaintiff leave to take the expert depositions of Messrs. Allen and Atchley under Fed. R. Civ. P. 30. *See Eastman v. Allstate Ins. Co.*, 2016 WL 795881, at *1 (S.D. Cal. Feb. 29, 2016) ("The first question is whether Allstate may reopen the depositions of two witnesses deposed initially during fact discovery and who subsequently produced reports as retained experts. The Court has little difficulty in finding that Allstate's need to depose the witnesses concerning their expert reports warrants Allstate in reopening the depositions and exceeding the total of seven hours of testimony for each deposition usually allowed under Federal Rule of Civil Procedure ('Rule') 30(d)(1).").

### Zoom Recording of Depositions

The Discovery Letter Brief raises a secondary issue regarding depositions (both expert depositions and fact witness depositions). [Dkt. 136 at 11]. Defendants argue that Plaintiff's counsel has been recording depositions using the Zoom app's recording function. *Id.* Defendants "have repeatedly objected" to the Zoom recordings, apparently initiated by Plaintiff's lead counsel, or lead counsel's employee and son, or Plaintiff's co-counsel. *Id.*

Under Federal Rule of Civil Procedure 28, "a deposition must be taken before: (A) an officer authorized to administer oaths either by federal law or by the law in the place of examination." Fed. R. Civ. P. 28(a)(1)(A). Further, "[a] deposition must not be taken before a person who is any party's relative, employee, or attorney; who is related to or employed by any party's attorney; or who is financially interested in the action." Fed. R. Civ. P. 28(c) (titled "Disqualification"). Under the plain text of Rule 28(c) therefore, none of Plaintiff's counsel (whether lead or co-counsel) nor the son or employee of any such counsel, is qualified to serve as an officer before whom a deposition may be taken.

As such, Rule 30 requires that the ***officer*** undertake several duties both at the beginning of, during, and after the deposition. *See* Fed. R. Civ. P. 30(b)(5). At the start of the deposition "[t]he officer must begin the deposition with an on-the-record statement" that includes five required items. *Id*. at Rule 30(b)(5)(a). During the deposition, "[i]f the deposition is recorded nonstenographically, the officer must repeat the items in Rule 30(b)(5)(A)(i)-(iii) at the beginning of each unit of the recording medium." *Id.* at Rule 30(b)(5)(B). And "[a]t the end of a deposition, the officer must

4

state on the record that the deposition is complete and must set out any stipulations . . . ." *Id.* at Rule 30(b)(5)(C). Neither Plaintiff's lead counsel, nor co-counsel, nor the employee/son of the lead counsel is qualified as an officer to perform any of these duties.

Indeed, courts faced with the issue of Zoom (or videoconference app) recording of remote depositions have rejected their use precisely because such an approach violates both Rules 28 and 30. *See Raiser v. San Diego Cnty.*, 2021 WL 2886048, at *6-8 (S.D. Cal. July 9, 2021); *Alcorn v. City of Chicago*, 336 F.R.D. 440, 443-44 (N.D. Ill. Aug. 20, 2020). Further, as noted by the *Alcorn* court, even if the "officer" issue were somehow overcome, the use of a videoconference software's recording function is not the same as a non-distorted recording of a deposition (which is what is required by Rule 30(b)(5)(B)). *Alcorn*, 336 F.R.D. at 444 ("A videoconference deposition is not the same as a video-recorded deposition. The former uses remote technology to conduct a deposition; the latter records and preserves the deposition in video format that could one day serve as a substitute for live testimony."). As *Alcorn* recognized, using Zoom's recording function would include recording the Zoom app's "Speaker view" and/or "Gallery view" features which either result in "screen flipping" or are distracting, do not focus on the witness, and would also record on-screen any Zoom chat messages. *Id.*; *see also Ryan v. eXp Realty LLC*, 2022 WL 475988, at * 1-2 (D. Ariz. Feb. 16, 2022) (denying Plaintiff's motion to record depositions using Zoom because of distraction in "view[s]" and screen sharing when exhibits are displayed).

Further, the *Ryan* court held that the Zoom recorded deposition was inadmissible at trial. *Ryan*, 2022 WL 475988 at *1-2. Thus, even if Zoom recording were allowed for the depositions here, such recordings would appear to be of little to no evidentiary value. *See also Raiser v. San Diego Cnty.*, 2021 WL 4751199, at *2 (S.D. Cal. Oct. 12, 2021) ("the deposition transcripts and the underlying audio and video [Zoom] recordings would likely be inadmissible as evidence because of their procedural inadequacies"). And should Plaintiff's counsel here attempt to later introduce the Zoom recordings into evidence on a pretrial motion (such as a summary judgment motion) or at trial, Defendants would be put in the unfair and burdensome position of then having to expend additional resources to address the same underlying procedural defects in the Zoom recordings which are at issue now. *Raiser*, 2021 WL 2886048, at *8 ("Plaintiff believes that he may avoid

United States District Court
Northern District of California

5

United States District Court
Northern District of California

these procedures because there are certain measures that Defendants could take to check against potential abuse, such as filing a motion in limine, recording the matter themselves to verify the transcript, or hiring a court reporter themselves. These measures are false choices. Defendants should not be the ones devoting their energy and incurring litigation costs when it is Plaintiff who is violating procedure. A conclusion otherwise would incentivize procedural breaches at two different levels.") (citation and footnote omitted). For these reasons, allowing disqualified persons to Zoom record the depositions is plainly not proportional to the needs of the case.

Accordingly, unless the Parties stipulate to Zoom recording of a deposition and unless the recording Party enters into a binding stipulation with all other Parties that the recording Party will not use or attempt to use any such Zoom recording of a deposition as evidence in this case (and will only use the Zoom recording to refresh counsel's recollection of the deposition), the Court **ORDERS** that there **SHALL BE NO** recording of expert or fact witness depositions using the recording function of the Zoom app or any other software used for videoconferencing. *See Alcorn*, 336 F.R.D. at 444-45. If a Party seeks to audiovisually record a deposition, that Party **SHALL** properly include in the notice of deposition the audiovisual recording means, **SHALL** retain a qualified videographer officer under Rule 28, and **SHALL** follow all the requirements of Rule 30 for conducting and certifying any such audiovisual or nonstenographic recording.

For avoidance of doubt, this ruling applies to the depositions of expert witnesses Mr. Allen and Mr. Atchley.

### CONCLUSION

As discussed above, this Order **RESOLVES** the expert deposition and discovery issues raised in the Joint Discovery Letter Brief. [Dkt. 136].

All the other disputes raised in the Letter Brief regarding fact discovery issues **SHALL** be heard at the hearing set for July 7, 2026 at 2 p.m. Between the date of this Order and the hearing date, counsel are **ORDERED** to meet and confer in good faith to attempt to resolve (or at least narrow) the disputes and number of disputes remaining. Counsel **SHALL** be prepared to present to the Court their offers and counteroffers of compromise on each of these remaining issues which

were discussed at the meet and confers and explain in detail why these offers/counteroffers of compromise were inadequate to find a middle ground and reach a negotiated resolution.

**IT IS SO ORDERED.**

Dated: June 29, 2026

_____

PETER H. KANG
United States Magistrate Judge

United States District Court
Northern District of California